IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 23, 2012 Session

**STATE OF TENNESSEE v. GREGORY N. BROWN**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 281186     Barry A. Steelman, Judge**

———————————

**No. E2012-01044-CCA-R3-CD - Filed December 21, 2012**

———————————

Defendant, Gregory N. Brown, was charged in a two-count indictment with domestic aggravated assault and cruelty to animals. Defendant pled guilty to domestic aggravated assault, a Class C felony, and the cruelty to animals charge was dismissed. Following a sentencing hearing, the trial court sentenced Defendant to serve six years as a Range I standard offender in the Tennessee Department of Correction (TDOC). Defendant appeals his sentence and argues that the trial court erred by imposing the maximum sentence within the applicable range. Following our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Andrew S. Basler, Chattanooga, Tennessee, for the appellant, Gregory N. Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; William H. Cox, III, District Attorney General; and David Schmidt, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Sentencing hearing*

Prior to the April 17, 2012, sentencing hearing, the State filed its notice of intent to seek enhanced punishment and of intent to impeach by use of Defendant's prior convictions. At the sentencing hearing, the trial court admitted into evidence judgments for the following

prior convictions: 1) petit larceny in 1985; 2) misdemeanor theft in 1994; 3) possession of drug paraphernalia in 2001; 4) unlawful possession of a weapon in 2000; 5) criminal trespass and attempt to commit theft in Walker County, Georgia in 2008; and 6) failure to appear in 2011.

LaVerne Brundidge testified that she and Defendant had "been together for eight years." On July 4, 2011, Defendant gave her five dollars and told her to buy marijuana. After she returned with the marijuana, Defendant "rolled [her] a joint" and went into "the living room where [she] was watching television, and all of a sudden, he kissed [her] right there and [her] leg went up, [her] right leg, and [she] kicked him in the groins, and evidently, [she] had glass, broken glass on [her] tennis shoes, and [she] cut [Defendant]." An altercation ensued between Defendant and Ms. Brundidge. Defendant hit Ms. Brundidge in the face with an open hand. Ms. Brundidge was taken by ambulance to the hospital and required stitches.

Ms. Brundidge's sister, Gwendolyn Shorter, testified that she had been caring for Ms. Brundidge since Ms. Brundidge was 17 years old. Ms. Brundidge had been diagnosed with schizophrenia and received a disability check, which "[t]hese men of hers smoke it up in cocaine." Ms. Shorter testified that Ms. Brundidge called her when she left the hospital and told her that Defendant "jumped on" her. Ms. Shorter testified that Ms. Brundidge's "face was just big, stitches all up [there]" and her hair "was just full of blood." Ms. Shorter testified that Ms. Brundidge's eyes were closed and that it "[t]ook them two days to start opening. They was [sic] bloodshot red." Ms. Shorter testified that Ms. Brundidge "was beat to death almost by [Defendant]. He tried to kill her."

Detective Kevin Willoughby was called to investigate the incident. He responded first to the hospital where Ms. Brundidge was treated. He took photographs of Ms. Brundidge's injuries. He testified that "both of [Ms. Brundidge's] eyes were swollen shut." Detective Willoughby also took photographs at Ms. Brundidge's home. He testified that there was "a large pool of blood" on the floor. Detective Willoughby interviewed Defendant, and Defendant stated that he and Ms. Brundidge "got into a mutual physical altercation. [Ms. Brundidge] was punching . . . and kicking [Defendant] in the groin, and [Defendant] was striking her back, hitting her in the head." Detective Willoughby testified that Defendant did not appear to be intoxicated.

Stephanie Anders, a board of probation and parole officer, prepared a presentence report. She interviewed Defendant, and Defendant stated that he and Ms. Brundidge had been in a relationship since 2003 and that Ms. Brundidge was bipolar, manic depressive, and had wild mood swings and that Defendant "basically acted as her caretaker the whole time he was with her, helping her with appointments and medications and things like that."

Defendant and Ms. Brundidge had been involved in domestic altercations on two prior occasions. On October 16, 2003, and on June 10, 2011, Defendant pled guilty to domestic assault against Ms. Brundidge. In both cases, Defendant was sentenced to 11 months and 29 days to be suspended on probation. Defendant also had a prior conviction for failure to appear. Defendant was also on probation for offenses committed in Georgia, and his probation had been transferred to Hamilton County. While on probation, Defendant failed to report and failed two drug screens, testing positive for cocaine and marijuana. Defendant also "failed to follow officer instructions and he failed to pay probation supervision fees."

Defendant reported to Ms. Anders that he had attended drug counseling on three separate occasions. Ms. Anders received records indicating that Defendant attended treatment in May, 2007, for cocaine use and was "discharged at staff request" after eight days. Defendant told Ms. Anders that Reverend Moore was the preacher at the church where Defendant reported he was "an active member." Ms. Anders contacted Reverend Moore, who stated that he had not spoken to Defendant since his arrest, but that Defendant "had sent a letter to him stating along the lines of, you know, devoting his life to God and things like that." Reverend Moore also told Ms. Anders that "he was very upset with [Defendant] because, on the date this offense occurred, [Defendant] had been in church and had stood up in church and preached about the good Lord and His word and His will, and then left church that night and then beat Ms. Brundidge."

Defendant testified that when he met Ms. Brundidge "approximately eight and a half, nine years ago[,] [s]he was being abused by her sister, who was also involved in drugs." Defendant testified, "[t]hrough the goodness of [his] compassionate heart, [his] daughter and [he] . . . took her in when she was rejected from her own residence because of an involvement in drugs that her sister had at that time." Defendant testified that he served in the United States Navy for two years and was honorably discharged. He later obtained his GED, and he had worked as a freelance carpenter and landscaper for the eight years that he was with Ms. Brundidge. He had enrolled in an online business school at the time of this incident. Defendant testified that he was "active in church since [he] was nine years old."

Defendant acknowledged that he had previously violated the conditions of probation by failing to pay his fine, testing positive for drugs, and failing to report, but he testified that he "wouldn't violate" if the court imposed a sentence of probation for this offense. When asked "how can the Court trust your word on that?" Defendant answered, "[t]hat's a good question." Defendant acknowledged that he had used cocaine for 22 years, but he testified that he had stopped using it in order "to further [his] college education and to better [him]self." Defendant testified that he "regret[ted] that incident in its entirety. It was unmitigated." He testified, "there were incidents that led to that situation."

At the conclusion of the sentencing hearing, the trial court considered the testimony and the presentence report and determined that Defendant's criminal history was "significant" and that Defendant had "apparently eleven convictions for various offenses that go back to 1985." The trial court concluded that Defendant possessed a criminal history evincing a clear disregard for the laws and morals of society. The court also concluded that Defendant had "failed in past efforts at rehabilitation in that he failed to comply with the conditions of probation pursuant to this conviction in 2008 and his absconding." The trial court therefore determined that Defendant was not a favorable candidate for alternative sentencing.

The trial court found, based on Defendant's prior convictions, that a sentence involving confinement was necessary to protect society. Based on the testimony and photographs of Ms. Brundidge's injuries, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense. The court noted, "[t]he old ancient proverb that a picture is worth a thousand words certainly is true here in that those photographs illustrate very clearly that this was a very serious offense, and the Court finds that to order anything less than confinement under these circumstances would depreciate the seriousness of the offense." The court found that measures less restrictive than confinement had recently been applied unsuccessfully to Defendant, "therefore calling for his confinement in this case." Considering "the nature and characteristics of the criminal conduct involved," the court accredited the testimony of Ms. Shorter and found:

> The lady who is the victim here has some challenges mentally and psychologically. Ms. Shorter just said what she's observed over the years, and that is, that the defendant used Ms. Brundidge for her, for her pay – for her disability check, and she said it but I saw it in the pictures. . . . [Defendant] brutally beat Ms. Brundidge, a slight woman, who the Court has observed here. There is no excuse for that under any set of circumstances, at least any set of circumstances that have been presented here, a kick or no kick, glass or no glass.

> I'm not even sure that that occurred. I believe Ms. Brundidge is attempting to mitigate this for [Defendant]. But even if that had occurred, that doesn't justify the injuries that I observed and that were testified to.

The trial court determined that the nature and characteristics of the criminal conduct involved were "severe" and "brutal." The court considered as mitigating factors that Defendant had "acknowledged his guilt [and] shown genuine remorse" and that Defendant was active in his church. The court stated, however, that it did not "give nearly as much weight to those factors as the Court [gave] to the enhancement factors[.]" The court applied

the following enhancement factors to Defendant's sentence. First, the court found hat Defendant had a previous history of criminal behavior in addition to those necessary to establish the appropriate range. The court noted that "[o]ne of those convictions involves an assault on the same victim within 30 days. So the Court gives that tremendous weight."

The court also found that the victim of the offense was particularly vulnerable because of her mental disability. The court noted, "[t]here is testimony in the record that the defendant took advantage of the victim by virtue of the fact that she was disabled, and I find that she was particularly vulnerable because of that mental disability." The court found that the personal injuries inflicted upon the victim were particularly great, that Defendant had failed to comply with the conditions of a sentence involving release into the community, and that Defendant was on probation at the time the offense in this case was committed. The court gave those enhancement factors "very significant weight." The trial court sentenced Defendant as a Range I standard offender to serve six years in the TDOC.

*Analysis*

On appeal, Defendant does not challenge the trial court's decision regarding the manner of service of his sentence. Rather, Defendant challenges only the length of his sentence, asserting that the trial court erred by imposing the maximum sentence within the applicable range.

The State responds that Defendant has waived the issue by failing to include in the record on appeal a transcript of the guilty plea hearing. The State argues that Defendant has failed to provide an adequate record for review and we are therefore precluded from considering the issue. *See* Tenn. R. App. P. 24(b); *State v. Ballard*, 855 S.W.2d 557, 560-61 (Tenn. 1993) ("Where the record is incomplete and does not contain a transcript of the proceedings relevant to an issue presented for review, or portions of the record upon which the party relies, an appellate court is precluded from considering the issue."). The State asserts that although some of the facts underlying Defendant's conviction can be derived from the transcript of the sentencing hearing, the guilty plea hearing transcript is significant because:

> [f]or those defendants who plead guilty, the guilty plea hearing is the equivalent of trial, in that it allows the State the opportunity to present the facts underlying the offense. For this reason, a transcript of the guilty plea hearing is often (if not always) needed in order to conduct a proper review of the sentence imposed.

*State v. Jerry Wayne Watson, Jr.*, No. M2009-01415-CCA-R3-CD, 2010 WL 2812564 at *1 (Tenn. Crim. App. July 13, 2010) (quoting *State v. Keen*, 996 S.W.2d 842, 843-44 (Tenn. Crim. App. 1999) (citations omitted).

Nevertheless, in this case the evidence presented at the sentencing hearing and the trial court's detailed findings of fact on the record are sufficient to review the court's sentencing determination. *See State v. Caudle*, ___ S.W.3d ___, 2012 WL 5907374 (Tenn. 2012). In *Caudle*, our supreme court held,

> We further hold that when a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in *Bise*.
>
> . . . .
>
> If . . . the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court.

*Id*. at *6 (citations omitted).

Previously, our review of a defendant's challenge to the length, range, or manner of service of a sentence was de novo with a presumption of correctness. However, our supreme court recently adopted a new standard of review for sentencing in light of the 2005 changes in Tennessee sentencing law. *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). In *Bise*, the Court concluded:

> In summary, the 2005 amendments to the 1989 Act were intended to bring our sentencing scheme in line with the decisions of the United States Supreme Court in this area. Accordingly, when the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the "presumption of correctness" ceased to be relevant. Instead, sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness."

*Id*. Accordingly, we now review a defendant's challenge to the sentence imposed by the trial court under an abuse of discretion standard with a "presumption of reasonableness." *Id*.

Tennessee's Sentencing Act provides:

(c)  The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender.  In imposing a specific sentence within the range of punishment, the court shall consider, *but is not bound by*, the following advisory sentencing guidelines:

(1)  The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2)  The sentence length within the range should be adjusted, as appropriate by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c)(1)-(2) (emphasis added).

In conducting a review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); *see also State v. Carter*, 254 S.W.3d 335, 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A trial court is mandated by the Sentencing Act to "impose a sentence within the range of punishment." T.C.A. § 40-35-210(c). A trial court, however, "is no longer required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors." *Carter*, 254 S.W.3d at 346.  Therefore, an appellate court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*.

A trial court's "fail[ure] to appropriately adjust" a sentence in light of applicable, but merely advisory, mitigating or enhancement factors, is no longer an appropriate issue for

appellate review. *Id*., 254 S.W.3d at 345 (citing *State v. Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007) (noting that "[t]he 2005 amendment [to the Sentencing Act] deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered the enhancement and mitigating factors merely advisory, not binding, on the trial courts"). In *Bise* the Court concluded:

> We hold, therefore, that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, 380 S.W.3d at 706.

Defendant argues that the trial court's application of enhancement factor (6), that the personal injuries inflicted upon the victim were particularly great, was improper because it is an element of the offense of aggravated assault. *See* Tenn. Code Ann. § 39-13-102 (aggravated assault requires proof that a defendant did intentionally or knowingly cause the victim serious bodily injury). Although Defendant has not cited any authority for this argument, we recognize that our supreme court has held that application of an enhancement factor which is contained in the elements of the offense is error. *State v. Imfeld*, 70 S.W.3d 698, 706 -707 (Tenn. 2002) ("In effect, elements of an aggravated assault against a specific, named victim are reflected in the statutory language of the enhancement factor, thus rendering its application to enhance the sentence inappropriate."). Moreover, Tennessee Code Annotated section 40-35-114 provides, "[i]f appropriate for the offense *and if not already an essential element of the offense*, the court shall consider, but is not bound by, [the statutory enhancement factors]." Tenn. Code Ann. § 40-35-114 (emphasis added). As noted above, unless a trial court "wholly depart[s] from the 1989 Act, as amended in 2005[,]" misapplication of enhancement or mitigating factors does not invalidate a sentence. Thus, a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing. *Bise*, 380 S.W.3d at 706; *Carter*, 254 S.W.3d at 345-46 ("Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors.") In this case, the trial court sentenced Defendant to six years for his conviction for aggravated assault, a sentence consistent with the purposes and principles of sentencing and within the appropriate range.

The record clearly shows, and Defendant concedes, that the trial court stated with specificity its reasons for imposing the maximum sentence. The record also shows that the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration to the principles that are relevant to sentencing. Based on our review, we conclude that the trial court did not abuse its discretion by imposing a sentence of six years for Defendant's aggravated assault conviction.

## CONCLUSION

The judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE